[Crim. No. 3186.   First Dist., Div. One.   May 4, 1956.]

THE PEOPLE, Respondent, v. WILLIAM S. BROWN, JR., Appellant.

300

Harry S. Wainwright for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Between February 22 and March 3, 1955, defendant, engaged in business in Portland, Oregon, cashed six checks in San Francisco which were returned by the drawee Portland bank because of insufficient funds. Prosecuted for issuance of these checks, he was convicted on account of four which he issued on February 22, 23 and 24, but acquitted in respect to two which he cashed on February 28 and March 3, and was given four county jail sentences of nine months each, running concurrently.

His defense was lack of intent to defraud, predicated upon his asserted belief that he had sufficient funds upon deposit.

He testified that in the first part of January, 1955, he opened the bank account by making a deposit of $1,000, followed by additional deposits on February 1, 4 and 5, bringing the total to $2,600. Also $2,500 became due him from a Mr. Hodges for work which was completed on February 7, 1955. He told Mr. Hodges that he was going to take a trip and the latter said he would deposit the $2,500 to defendant's account at

the Portland bank "right away." Defendant was not definite as to the exact date that Mr. Hodges was to deposit the money, but he had a "strong impression that he said that he would do it the following day." Defendant was not concerned about it because he "wasn't embarrassed" for funds at the time. Defendant left Portland on February 7 with the expectation that Hodges would deposit the money to his account. Later, on February 15, defendant spoke to Mrs. Hodges on the telephone and she told him that Hodges was in Los Angeles and that the money would be deposited immediately.

Defendant testified that when he wrote the two checks of February 28 and March 3, he believed Mr. Hodges had deposited the funds to defendant's account but that when he issued the other four checks on February 22, 23 and 24 he gave no consideration to the Hodges' deposit, that he believed he had sufficient funds in the bank irrespective of the funds which he believed were forthcoming from Mr. Hodges; those checks were not written with any reliance upon the Hodges' money being deposited to defendant's account; he believed he had sufficient funds in the bank to cover those checks irrespective of the Hodges' funds.

The trial court instructed the jury that one of the defenses was the defense of reasonable expectation of funds from Mr. Hodges but the jury should not consider that evidence in respect to the four checks issued during the period February 22 to 24, inclusive, because defendant was not at the time of their issuance relying upon the funds he expected from Mr. Hodges.

Defendant claims that thus limiting this evidence was prejudicial error. We are not persuaded. Honorable John B. Molinari, the judge who presided at the trial, aptly answered this contention in these words, during a discussion of the subject outside the presence of the jury: "The witness testified in practically unequivocal terms that it didn't make any difference to him whether he had the Hodges money in the bank, as far as these four checks were concerned. He wasn't concerned whether Hodges ever made that deposit, so far as those checks are concerned."

In further support of his appeal defendant claims that his right to a speedy trial was violated. Two informations were filed against him, one on March 31, the other on May 25. On May 26, pursuant to stipulation, the two cases were consolidated for trial, to commence May 31, the date to which

the trial of the first case had theretofore been continued. On May 31 the trial started. A jury was selected and two witnesses testified that day, proving the issuance of the checks and putting the checks in evidence. That was a bringing to trial within 60 days after the filing of the first information in view of the fact that the 60th day fell upon May 30, a holiday. That satisfied the requirements of section 1382 of the Penal Code.*

██ Upon making proof of the issuance of the checks in San Francisco and their return after rejection by the Portland bank, the district attorney asked for a continuance to obtain an Oregon subpoena to bring an official of the Portland bank here as a witness. Defense counsel objected because, he stated, the prosecutor had had ample time before trial to subpoena the witness. The prosecutor gave his reasons for the delay, as follows: "I was in telephone communication with the bank authorities and they told me they would be present today and it was not until Friday morning [May 31 fell on a Tuesday] that they called me and said that their legal staff had advised them not to come, and they would not come. As your Honor knows, I then got out a regular foreign subpoena and served it on them, and they still didn't think that was sufficient. They were informed this morning that they did not consider our foreign subpoena sufficient; that they would want one in conformance with the uniform witness act."

The court believed the prosecutor and stated that the court had been informed all along of the steps that the prosecution was taking to obtain the Oregon witnesses, and felt that the prosecutor had been diligent in his attempts to secure the witnesses as soon as possible.

██ The prosecutor further stated in reply to defense counsel's accusation that he did not begin his trial preparation in time, that defendant had represented to the district attorney's office that he was going to plead guilty. Defense counsel denied that such a representation had been made, but the prosecutor stated that at the time that the representation had been made, defendant was not represented by the present defense counsel. The court stated in that regard: "From

---

*Section 1050 of the Penal Code declares the policy that the trial of a criminal case commence not later than 30 days after entry of defendant's plea and that continuances be not granted except under certain conditions. These provisions operate more as a declaration of policy, not as a strict and literal mandate. (*Zamloch* v. *Municipal Court,* 106 Cal.App.2d 260, 263 [235 P.2d 25] and cases there cited.)

what Mr. Campbell [the prosecutor] tells me, whoever represented this man in the lower court lulled the District Attorney into believing perhaps there would be a plea and those of us who are acquainted with procedures around here can almost take judicial knowledge that quite often when a plea is indicated, the People do not prosecute on other available counts.'' The trial judge also stated that he knew that the district attorney gave precedence in his preparation to cases in which a plea of guilty is not indicated. The court concluded that in its opinion the People's request for a continuance was reasonable because they had been diligent, and continued the trial to June 6.

We conclude that in the granting of this continuance there was neither a violation of defendant's right to a speedy trial nor an abuse of the sound discretion vested in the trial judge.

On June 6, an official of the Portland bank took the witness stand and the trial was resumed. When the People rested defendant's counsel made his opening statement and defendant testified at considerable length, whereupon a recess was taken to June 8. Upon the latter date, after evidence was all in, the trial was continued to June 14 to have defendant's testimony transcribed by the reporter and considered by the judge in determining whether or not defendant's testimony concerning the expected payment from Mr. Hodges should be applicable only in relation to the two checks last issued by defendant. This continuance to June 14 was for defendant's own benefit. Defendant is not complaining of the last two continuances but mention of them seems desirable in order to complete the picture.

The judgment and the order denying a new trial are affirmed.

Peters, P. J., and Bray, J., concurred.